## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

WILLIAM P. JACKSON,               :       Civil No. 3:24-cv-1469
                                  :
     Plaintiff              :       (Judge Mariani)
                                  :
  v.                              :
                                  :
DR. LABOSKY, *et al.*,            :
                                  :
     Defendants              :

**FILED**
**SCRANTON**

APR 28 2025

PER_____
       DEPUTY CLERK

### MEMORANDUM

Plaintiff William Jackson ("Jackson"), an inmate in the custody of the Pennsylvania

Department of Corrections ("DOC"), filed this *pro se* civil rights action pursuant to 42 U.S.C.

§ 1983. (Doc. 1). Named as Defendants are Dentist Labosky, Dentist Ehgartner, Dental

Assistant Diehl, Dental Assistant Hess, Superintendent Rivello, Deputy Superintendent

Spyker, and Corrections Health Care Administrator ("CHCA") McCorkle. (*Id.*).

Before the Court is a motion for judgment on the pleadings filed on behalf of

Defendants Rivello, Spyker, and McCorkle. (Doc. 33). For the reasons that follow, the

motion will be granted in part and denied in part.

## I.   Allegations of the Complaint

The gravamen of Jackson's lawsuit is alleged deliberate indifference to serious

medical needs in violation of the Eighth Amendment related to his dental care from March

2024 to August 2024, while he was incarcerated at SCI-Smithfield, SCI-Camp Hill, SCI-

Fayette, and SCI-Huntingdon. (Doc. 1).

Jackson alleges that he arrived at SCI-Smithfield on March 12, 2024. (*Id.* ¶ IV, 1). Upon intake at SCI-Smithfield, Jackson allegedly reported to medical staff that he had cavities, no back teeth, and experienced pain and difficulty chewing. (*Id.* ¶ IV, 2). Between March 12, 2024 and April 2, 2024, Jackson asserts that he submitted several sick call slips complaining about cavities and pain. (*Id.* ¶ IV, 3). On April 2, 2024, Dentist Ehgartner treated Jackson and repaired his tooth. (*Id.* ¶ IV, 4). During this appointment, Jackson alleges that Dental Assistant Diehl broke a crown. (*Id.*). Dentist Ehgartner informed Jackson that he would cement the crown, but he needed a new post which could be done at Jackson's home prison. (*Id.* ¶¶ IV, 5-6). The complaint does not contain any factual allegations against Defendants Rivello, Spyker, and McCorkle with respect to the alleged events at SCI-Smithfield. (*Id.* ¶¶ IV, 1-12).

Jackson was then transferred to SCI-Camp Hill for classification. (*Id.* ¶ IV, 7). During intake at SCI-Camp Hill, Jackson was informed that he should wait until he was transferred to his home prison to address his needs. (*Id.* ¶ IV, 8). On May 8, 2024, Jackson was transferred to SCI-Fayette. (*Id.* ¶ IV, 9). At SCI-Fayette, Jackson submitted sick call slips related to his dental condition but was again informed that he should wait until he was transferred to his home prison to address his needs. (*Id.* ¶¶ IV, 10-11). The complaint does not contain any factual allegations against Defendants Rivello, Spyker, and McCorkle with respect to the alleged events at SCI-Camp Hill or SCI-Fayette. (*Id.* ¶¶ IV, 7-11).

On June 20, 2024, Jackson was transferred to SCI-Huntingdon, his home prison. (*Id.* ¶ IV, 12). During intake, Jackson claims that he reported to medical staff that he had several cavities, severe pain, bleeding gums, difficulty chewing, and no back teeth to chew with. (*Id.* ¶ IV, 13). A few days later, on June 26, 2024, Jackson's crown fell out—the same day he sent a sick call slip regarding his broken crown and cavities. (*Id.* ¶ IV, 14). Between June 30, 2024 and July 2, 2024, Jackson submitted sick call slips due to pain and bleeding gums. (*Id.* ¶ IV, 16). On July 3, 2024, Jackson was called to the dental office when Dental Assistant Hess allegedly informed him that there was a line for dental services, and he was "not jumping the line." (*Id.* ¶ IV, 17). That same day, Dentist Labosky examined Jackson and informed him that he needed a new post. (*Id.* ¶ IV, 19). Dentist Labosky allegedly stated that the DOC does not put in posts, and that Jackson would have to get the post implanted when he was released from prison. (*Id.*). Jackson alleges that Dental Assistant Hess confiscated the crown that had fallen out of Jackson's mouth as contraband because it contained metal. (*Id.* ¶ IV, 20). Dental Assistant Hess again informed Jackson that he had to wait for care regarding his cavities, pain, and bleeding gums because there were several inmates waiting in line for treatment before him. (*Id.* ¶¶ IV, 20-22).

Between June 29, 2024, and July 26, 2024, Jackson claims that he sent eight Inmate Request to Staff Member forms to CHCA McCorkle. (*Id.* ¶ IV, 27). CHCA McCorkle allegedly responded that "[i]t was explained to you, there is a waiting list and you can't jump the line." (*Id.*).

3

Between June 29, 2024, and August 8, 2024, Jackson claims that he sent eight Inmate Request to Staff Member forms to Superintendent Rivello. (*Id.* ¶ IV, 28). Superintendent Rivello allegedly did not intercede on Jackson's behalf. (*Id.*).

Between June 30, 2024, and August 8, 2024, Jackson claims that he sent ten Inmate Request to Staff Member forms to Deputy Superintendent Spyker. (*Id.* ¶ (IV)(29). Deputy Superintendent Spyker allegedly did not intercede on Jackson's behalf. (*Id.*).

On July 11, 2024, Jackson submitted a sick call slip concerning his pain and bleeding gums and indicated that he had to miss meals due to his dental condition. (*Id.* ¶ IV, 30). The complaint does not indicate who Jackson sent this slip to. (*See id.*).

On July 11, 2024, Dentist Labosky treated Jackson and drilled down two of his teeth. (*Id.* ¶ IV, 31). Jackson alleges that Dentist Labosky did not address his pain, cavities, broken crown, bleeding gums, or need for a bridge. (*Id.*).

Between July 24, 2024 and August 8, 2024, Jackson claims that he submitted ten sick call slips complaining about his pain and bleeding gums. (*Id.* ¶ IV, 32). The complaint does not indicate who these slips were sent to. (*See id.*).

On July 31, 2024, Jackson met with Dentist Labosky and Dental Assistant Hess and informed them that he intended to file a civil complaint for denial of medical care. (*Id.* ¶ IV, 33). In response to this statement, Jackson alleges that Dentist Labosky and Dental Assistant Hess failed to provide medical care on that date. (*Id.*). Jackson does not allege

that Defendants Rivello, Spyker, or McCorkle were present or were aware of the July 31, 2024 alleged events.  (*See id.*).

## II.    Legal Standards

### A.    Federal Rule of Civil Procedure 12(c)

A motion for judgment on the pleadings is the procedural hybrid of a motion to dismiss and a motion for summary judgment.  *Westport Ins. Corp. v. Black, Davis & Shue Agency, Inc.*, 513 F. Supp. 2d 157, 162 (M.D. Pa. 2007).  Rule 12(c) of the Federal Rules of Civil Procedure provides: "After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings."  FED. R. CIV. P. 12(c).  To succeed on a Rule 12(c) motion, the movant must clearly establish that no material issue of fact remains to be resolved and that the movant "is entitled to judgment as a matter of law."  *Sikirica v. Nationwide Ins. Co.*, 416 F.3d 214, 220 (3d Cir. 2005); *see* 5C Charles Alan Wright and Arthur R. Miller, Federal Practice and Procedure § 1368 (3d ed.).

A Rule 12(c) motion for judgment on the pleadings is decided under a standard similar to a Rule 12(b)(6) motion to dismiss.  *See Zimmerman v. Corbett*, 873 F.3d 414, 417 (3d Cir. 2017).  That is, judgment on the pleadings should be granted only when, accepting as true the facts alleged by the nonmovant and drawing "all reasonable inferences" in that party's favor, the movant is entitled to judgment as a matter of law.  *See Zimmerman*, 873 F.3d at 417-418 (citation omitted).  In deciding motions for judgment on the pleadings, courts may only consider "the complaint, exhibits attached to the complaint, matters of

public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Wolfington v. Reconstructive Orthopaedic Assocs. II PC*, 935 F.3d 187, 195 (3d Cir. 2019) (quoting *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010)).

B.    42 U.S.C. § 1983

Section 1983 of Title 42 of the United States Code offers private citizens a cause of action for violations of federal law by state officials. *See* 42 U.S.C. § 1983. The statute provides, in pertinent part, as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....

*Id.; see also Gonzaga Univ. v. Doe*, 536 U.S. 273, 284-85 (*2002*); *Kneipp v. Tedder*, 95 F.3d 1199, 1204 (3d Cir. 1996). To state a claim under § 1983, a plaintiff must allege "the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). Thus, § 1983 limits liability to persons who violate constitutional rights.

III.    **Discussion**

To succeed on an Eighth Amendment denial of medical care claim, the plaintiff must demonstrate: (1) that they had a serious medical need; and (2) that prison officials were deliberately indifferent to that need.  *See Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999).  A serious medical need exists when a "failure to treat can be expected to lead to substantial and unnecessary suffering, injury, or death."  *Colburn v. Upper Darby Twp.*, 946 F.2d 1017, 1023 (3d Cir. 1991).  Deliberate indifference may be manifested by an intentional refusal to provide care, delayed medical treatment for non-medical reasons, denial of prescribed medical treatment, a denial of reasonable requests for treatment that results in suffering or risk of injury, *see Durmer v. O'Carroll*, 991 F.2d 64, 68 (3d Cir. 1993), or "persistent conduct in the face of resultant pain and risk of permanent injury," *White v. Napoleon*, 897 F.2d 103, 109 (3d Cir. 1990).

At the same time, "[i]t is well-settled that claims of negligence or medical malpractice, without some more culpable state of mind, do not constitute 'deliberate indifference.'" *Rouse*, 182 F.3d at 197.  "[A]s long as a physician exercises professional judgment his behavior will not violate a prisoner's constitutional rights."  *Brown v. Borough of Chambersburg*, 903 F.2d 274, 278 (3d Cir. 1990); *see also Kennedy v. S.C.I. Rockview Emps.*, 2010 WL 4853959, at *4 (M.D. Pa. Nov. 22, 2010) (quoting *Inmates of Allegheny Cnty. Jail v. Pierce*, 612 F.2d 754, 762 (3d Cir. 1979)) ("[C]ourts give prison medical personnel wide latitude in the diagnosis and treatment of inmates [and] should 'disavow any

attempt to second guess the propriety or adequacy of a particular course of treatment...which remains a question of sound professional judgment.'"). An inmate's disagreement with the nature of the medical treatment they receive is therefore not enough to establish deliberate indifference. *See Estelle*, 429 U.S. at 106 ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."). Further, "[i]f a prisoner is under the care of medical experts...a non-medical prison official will generally be justified in believing that the prisoner is in capable hands." *Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004).

Assuming that Jackson has stated a serious medical need with respect to his dental condition, he has not plausibly alleged that Superintendent Rivello and Deputy Superintendent Spyker were deliberately indifferent to his medical needs. However, with respect to Corrections Health Care Administrator McCorkle, the complaint alleges facts to support a plausible inference that McCorkle acted with deliberate indifference to Jackon's medical needs, and the Eighth Amendment claim against McCorkle shall proceed.

First, Defendants Rivello, Spyker, and McCorkle are not medical professionals. Based on the allegations of the complaint, it is clear that Jackson was under the care of medical professionals. "[A]bsent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner, a non-medical prison official...will not be chargeable with the Eighth Amendment scienter requirement of deliberate indifference." *Spruill*, 372 F.3d at 236; *see also Durmer*, 991 F.2d at 69 (finding

8

that failure by nonmedical prison officials to respond to medical complaints from prisoner-plaintiff "already being treated by the prison doctor" does not establish deliberate indifference).  Defendants Rivello and Spyker are entitled to dismissal on this ground.  Regarding Defendant McCorkle, the Court acknowledges that Health Care Administrators "are undisputably administrators, not doctors." *Thomas v. Dragovich*, 142 F. App'x 33, 39 (3d Cir. 2005) (nonprecedential).  However, Jackson obviously had problems with the dental treatment he was receiving and allegedly submitted eight Inmate Request to Staff Member forms to McCorkle, and McCorkle responded on at least one occasion.  (Doc. 1 ¶ IV, 27).  Jackson further alleges that Defendant McCorkle is responsible for overseeing the medical care of inmates at SCI-Huntingdon.  (*Id.* ¶ III, 3).  Based on the allegations, Jackson has indicated that McCorkle knew or had a reason to believe that medical staff were mistreating him or not treating him at all.

Next, Jackson's allegation that he sent Inmate Request to Staff Member forms and grievances to Rivello and Spyker, and that they failed to intercede, is insufficient, alone, to rise to the level of a constitutional violation, especially since Jackson was receiving medical and dental treatment from professionals.  (Doc. 1 ¶¶ IV, 26, 28-30).  It has long been recognized that a state prisoner's allegation that prison officials and administrators responded inappropriately or failed to respond to a prisoner's complaint or grievance, is insufficient to establish personal involvement in the underlying unconstitutional conduct.  See *Durmer*, 991 F.2d at 69 (nonmedical prison officials' failure to respond to inmate letters

9

complaining of underlying conduct is not unconstitutional); *Rode v. Dellarciprete*, 845 F.2d 1195, 1207-08 (3d Cir. 1998) (concluding that after-the-fact review of a grievance is insufficient to demonstrate the actual knowledge necessary to establish personal involvement); *Simonton v. Tennis*, 437 F. App'x 60, 62 (3d Cir. 2011) (nonprecedential) ("[A] prison official's secondary review of an inmate's grievance or appeal is not sufficient to demonstrate the personal involvement required to establish the deprivation of a constitutional right"); *Brooks v. Beard*, 167 F. App'x 923, 925 (3d Cir. 2006) (nonprecedential) (holding that allegations that prison officials and administrators responded inappropriately, or failed to respond to a prison grievance, did not establish that the officials and administrators were involved in the underlying allegedly unconstitutional conduct).

Finally, to the extent that Jackson attempts to hold Superintendent Rivello and Deputy Superintendent Spyker liable based on their supervisory roles, this claim also fails. It is well-established that officials may not be held liable for unconstitutional conduct of their subordinates under a theory of *respondeat superior*.  *See Rode*, 845 F.2d at 1207. Accordingly, insofar as Jackson's claims against Defendants Rivello and Spyker rely on a *respondeat superior* theory of liability, they are entitled to dismissal on this ground.  *See Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) (stating that "[p]ersonal involvement requires particular 'allegations of personal direction or of actual knowledge and acquiescence'" (quoting *Rode*, 845 F.2d at 1207)); *Thomas v. Tice*, 948 F.3d 133, 138 (3d

Cir. 2020) (explaining that, in order for a plaintiff to prevail under Section 1983, he must make "a showing that each defendant was personally involved in the alleged wrongdoing").

Because the complaint is devoid of allegations from which the Court can plausibly infer that Defendants Rivello and Spyker were deliberately indifferent to Jackson's serious medical needs or were personally involved in the alleged constitutional violations, their motion for judgment on the pleadings will be granted. However, the Court will deny Defendants' motion with respect to the claims against McCorkle. It is necessary to obtain a factual record as to the responsibilities, if any, of CHCA McCorkle in determining when and how an inmate receives medical and/or dental care.

## IV.    Leave to Amend

The Third Circuit has instructed that if a complaint is vulnerable to dismissal for failure to state a claim, the district court must permit a curative amendment, unless an amendment would be inequitable or futile. *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002). Further, "[a] district court has 'substantial leeway in deciding whether to grant leave to amend.'" *In re Avandia Mktg., Sales Practices & Prod. Liab. Litig.*, 564 F. App'x 672, 673 (3d Cir. 2014) (nonprecedential) (quoting *Lake v. Arnold*, 232 F.3d 360, 373 (3d Cir. 2000)). The claims against Defendants Rivello and Spyker are factually and legally flawed and thus incurable. Therefore, the Court concludes that curative amendment would be a futile endeavor.

11

## V.     <u>Conclusion</u>

Consistent with the foregoing, the motion (Doc. 33) for judgment on the pleadings by Defendants Rivello, Spyker, and McCorkle will be granted in part and denied in part.

A separate Order shall issue.

Robert D. Mariani
United States District Judge

Dated: April 28, 2025