## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| WILLIAM P. JACKSON, | : | Civil No. 3:24-cv-1469 |
| | : | |
| Plaintiff | : | (Judge Mariani) |
| | : | |
| v. | : | |
| | : | |
| DR. LABOSKY, *et al.*, | : | |
| | : | |
| Defendants | : | |

### MEMORANDUM

Plaintiff William Jackson ("Jackson"), an inmate in the custody of the Pennsylvania Department of Corrections ("DOC"), initiated this *pro se* civil rights action on August 29, 2024, by filing a complaint pursuant to 42 U.S.C. § 1983. (Doc. 1). Named as Defendants are Dentist Labosky, Dentist Ehgartner, Dental Assistant Diehl, Dental Assistant Hess, Superintendent Rivello, Deputy Superintendent Spyker, and Corrections Health Care Administrator ("CHCA") McCorkle. (*Id.*).

Before the Court are motions to dismiss filed on behalf of Dentist Labosky and Dentist Ehgartner (together, the "Dental Defendants"). (Docs. 41, 46). Pursuant to Federal Rule of Civil Procedure 12(d), the motions will be treated as ones for summary judgment, and disposed of as provided in Rule 56, only with respect to the issue of exhaustion of administrative remedies.[1]   The Court will then address the merits of the claim under Rule

_____

[1]   On February 28, 2025, the Court issued an Order apprising the parties that the motions to dismiss would be treated as ones for summary judgment with respect to the issue of exhaustion of

12(b).  Jackson failed to respond to the Dental Defendants' motions and the time for

responding has now passed.[2]  Therefore, the motions are deemed unopposed and ripe for

resolution.  For the reasons set forth below, the Court will grant the motions.

## I.    Allegations of the Complaint

The gravamen of Jackson's lawsuit is alleged deliberate indifference to serious

medical needs in violation of the Eighth Amendment related to his dental care from March

2024 to August 2024, while he was incarcerated at SCI-Smithfield, SCI-Camp Hill, SCI-

Fayette, and SCI-Huntingdon.  (Doc. 1).

Jackson alleges that he arrived at SCI-Smithfield on March 12, 2024.  (*Id.* ¶ IV, 1).

Upon intake at SCI-Smithfield, Jackson allegedly reported to medical staff that he had

cavities, no back teeth, and experienced pain and difficulty chewing.  (*Id.* ¶ IV, 2).  Between

March 12, 2024 and April 2, 2024, Jackson asserts that he submitted several sick call slips

complaining about cavities and pain.  (*Id.* ¶ IV, 3).  On April 2, 2024, Defendant Dentist

Ehgartner treated Jackson and repaired his tooth.  (*Id.* ¶ IV, 4).  During this appointment,

Jackson alleges that Dental Assistant Diehl broke a crown.  (*Id.*).  Defendant Dentist

---

administrative remedies.  (Doc. 50).  Because Defendants raised the issue of exhaustion of administrative
remedies, the Court also notified the parties that it would consider exhaustion in its role as factfinder in
accordance with *Paladino v. Newsome*, 885 F.3d 203 (3d Cir. 2018) and *Small v. Camden Cnty.*, 728 F.3d
265 (3d Cir. 2013), and afforded the parties the opportunity to supplement the record with any additional
evidence relevant to exhaustion of administrative remedies.  (Doc. 50).

[2]    Jackson was directed to file a brief in opposition to Defendants' motions and was admonished
that failure to file an opposition brief would result in Defendants' motions being deemed unopposed.  (Doc.
50) (citing M.D. PA. LOCAL RULE OF COURT 7.6).

Ehgartner informed Jackson that he would cement the crown, but he needed a new post which could be done at Jackson's home prison. (*Id.* ¶¶ IV, 5-6).

Jackson was then transferred to SCI-Camp Hill for classification. (*Id.* ¶ IV, 7). During intake at SCI-Camp Hill, Jackson was informed that he should wait until he was transferred to his home prison to address his needs. (*Id.* ¶ IV, 8). On May 8, 2024, Jackson was transferred to SCI-Fayette. (*Id.* ¶ IV, 9). At SCI-Fayette, Jackson submitted sick call slips related to his dental condition but was again informed that he should wait until he was transferred to his home prison to address his needs. (*Id.* ¶¶ IV, 10-11).

On June 20, 2024, Jackson was transferred to SCI-Huntingdon, his home prison. (*Id.* ¶ IV, 12). During intake, Jackson claims that he reported to medical staff that he had several cavities, severe pain, bleeding gums, difficulty chewing, and no back teeth. (*Id.* ¶ IV, 13). A few days later, on June 26, 2024, Jackson's crown fell out—the same day he sent a sick call slip regarding his broken crown and cavities. (*Id.* ¶ IV, 14). Between June 30, 2024 and July 2, 2024, Jackson submitted sick call slips due to pain and bleeding gums. (*Id.* ¶ IV, 16). On July 3, 2024, Jackson was called to the dental office when Dental Assistant Hess allegedly informed him that there was a line for dental services, and he was "not jumping the line." (*Id.* ¶ IV, 17). That same day, Defendant Dentist Labosky examined Jackson and informed him that he needed a new post. (*Id.* ¶ IV, 19). Defendant Dentist Labosky allegedly stated that the DOC does not put in posts, and that Jackson would have to get the post implanted when he was released from prison. (*Id.*). Jackson alleges that

3

Dental Assistant Hess confiscated the crown that had fallen out of Jackson's mouth as contraband because it contained metal. (*Id*. ¶ IV, 20). Dental Assistant Hess again informed Jackson that he had to wait for care regarding his cavities, pain, and bleeding gums because there were several inmates waiting in line for treatment before him. (*Id.* ¶¶ IV, 20-22).

Between June 29, 2024, and July 26, 2024, Jackson claims that he sent eight Inmate Request to Staff Member forms to CHCA McCorkle. (*Id.* ¶ IV, 27). CHCA McCorkle allegedly responded that "[i]t was explained to you, there is a waiting list and you can't jump the line." (*Id.*).

Between June 29, 2024, and August 8, 2024, Jackson claims that he sent eight Inmate Request to Staff Member forms to Superintendent Rivello. (*Id.* ¶ IV, 28). Superintendent Rivello allegedly did not intercede on Jackson's behalf. (*Id.*).

Between June 30, 2024, and August 8, 2024, Jackson claims that he sent ten Inmate Request to Staff Member forms to Deputy Superintendent Spyker. (*Id.* ¶ (IV)(29). Deputy Superintendent Spyker allegedly did not intercede on Jackson's behalf. (*Id.*).

On July 11, 2024, Jackson submitted a sick call slip concerning his pain and bleeding gums and indicated that he had to miss meals due to his dental condition. (*Id.* ¶ IV, 30). The complaint does not indicate who Jackson sent this slip to. (*See id.*).

4

On July 11, 2024, Defendant Dentist Labosky treated Jackson and drilled down two of his teeth. (*Id.* ¶ IV, 31). Jackson alleges that Defendant Dentist Labosky did not address his pain, cavities, broken crown, bleeding gums, or need for a bridge. (*Id.*).

Between July 24, 2024 and August 8, 2024, Jackson claims that he submitted ten sick call slips complaining about his pain and bleeding gums. (*Id.* ¶ IV, 32). The complaint does not indicate who these slips were sent to. (*See id.*).

On July 31, 2024, Jackson met with Defendant Dentist Labosky and Dental Assistant Hess and informed them that he intended to file a civil complaint for denial of medical care. (*Id.* ¶ IV, 33). In response to this statement, Jackson alleges that Defendant Dentist Labosky and Dental Assistant Hess failed to provide medical care on that date. (*Id.*).

## II.    **Rule 56 Motion**

### A.    Legal Standard

Through summary adjudication, the court may dispose of those claims that do not present a "genuine dispute as to any material fact." FED. R. CIV. P. 56(a). "As to materiality, . . . [o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The party moving for summary judgment bears the burden of showing the absence of a genuine issue as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once such a showing has been made, the non-moving

party must offer specific facts contradicting those averred by the movant to establish a genuine issue of material fact. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990). Therefore, the non-moving party may not oppose summary judgment simply on the basis of the pleadings, or on conclusory statements that a factual issue exists. *Anderson*, 477 U.S. at 248. "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record . . . or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." FED. R. CIV. P. 56(c)(1)(A)-(B). In evaluating whether summary judgment should be granted, "[t]he court need consider only the cited materials, but it may consider other materials in the record." FED. R. CIV. P. 56(c)(3). "Inferences should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir.1992), *cert. denied* 507 U.S. 912 (1993).

However, "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380, 127 S. Ct. 1769, 1776, 167 L. Ed. 2d 686 (2007). If a party has carried its burden under the summary judgment rule,

> its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. The mere existence of some alleged factual dispute between

the parties will not defeat an otherwise properly supported motion for
summary judgment; the requirement is that there be no genuine issue of
material fact. When opposing parties tell two different stories, one of which is
blatantly contradicted by the record, so that no reasonable jury could believe
it, a court should not adopt that version of the facts for purposes of ruling on a
motion for summary judgment.

*Id.* (internal quotations, citations, and alterations omitted).

### B.    Statement of Undisputed Facts[3]

On August 29, 2024, Jackson filed his complaint alleging, *inter alia*, that Defendants

Labosky and Ehgartner provided him inadequate dental treatment during his 2024

incarceration. (Doc. 52 ¶ 1). Jackson alleges that Ehgartner provided inadequate care on

April 2, 2024. (*Id.* ¶ 2). He alleges that Labosky provided inadequate care on July 3, 2024,

July 11, 2024, and July 31, 2024. (*Id.* ¶ 3). Jackson asserts that he filed grievance number

1095487 relating to these matters on April 3, 2024. (*Id.* ¶ 4). Based on these claims,

---

[3]    Local Rule 56.1 requires that a motion for summary judgment pursuant to Federal Rule of Civil
Procedure 56 be supported "by a separate, short, and concise statement of the material facts, in numbered
paragraphs, as to which the moving party contends there is no genuine issue to be tried." LOCAL RULE OF
COURT 56.1. A party opposing a motion for summary judgment must file a separate statement of material
facts, responding to the numbered paragraphs set forth in the moving party's statement and identifying
genuine issues to be tried. *Id.* Unless otherwise noted, the factual background herein derives from the
Dental Defendants' Rule 56.1 statement of material facts. (Doc. 52). Jackson failed to file a response to
the Dental Defendants' statement of material facts. Therefore, as authorized by Local Rule 56.1, the Court
will admit as uncontroverted the statement of facts submitted by the Dental Defendants. *See* M.D. PA.
LOCAL RULE OF COURT 56.1 ("All material facts set forth in the statement required to be served by the
moving party will be deemed to be admitted unless controverted by the statement required to be served by
the opposing party."); *see also Rau v. Allstate Fire & Cas. Ins. Co.*, 793 F. App'x 84, 87 (3d Cir. 2019)
(upholding this Court's decision to strike non-movant's non-responsive counterstatement of facts under
Local Rule 56.1); *Weitzner v. Sanofi Pasteur Inc.*, 909 F.3d 604, 613 (3d Cir. 2018) (finding that "the District
Court is in the best position to determine the extent of a party's noncompliance with Local Rule 56.1, as
well as the appropriate sanction for such noncompliance"); *see also* Doc. 50 ¶ 3 (advising Jackson that
failure to file a responsive statement of material facts would result in the facts set forth in the Dental
Defendants' statement of material facts being deemed admitted).

Jackson alleges that the Dental Defendants were deliberately indifferent to his serious dental needs in violation of the Eighth Amendment.  (*Id.* ¶ 5).

The Pennsylvania Department of Corrections maintains a grievance system policy which sets out a three-step grievance and appeals process available to inmates incarcerated within the DOC.  (*Id.* ¶ 8).  Department policy DC-ADM 804 is the DOC's Consolidated Inmate Grievance Review System.  (*Id.*).  An inmate must submit a grievance to the Facility Grievance Coordinator within 15 days of the date of the event upon which the claim is based.  (*Id.* ¶ 9).  The grievance must be legible and include a statement of facts and identify all individuals involved with the alleged event.  (*Id.* ¶ 10).  Grievances based upon separate events must be filed separately.  (*Id.* ¶ 11).  Any event or issue that has already been addressed by a previous grievance, or is currently being addressed by a pending grievance, cannot be re-addressed by an inmate filing another grievance.  (*Id.* ¶ 12).  An inmate can appeal an initial review response to the Facility Manager within 15 days from the initial review.  (*Id.* ¶ 13).  An inmate can appeal the decision of the Facility manager by submitting an Inmate Appeal to Final Review within 15 days of the Facility Manager's decision.  (*Id.* ¶ 14).  The Final Review is completed by the Secretary's Office of Inmate Grievances and Appeals ("SOIGA").  (*Id.* ¶ 15).

On October 15, 2024, counsel for the Dental Defendants sent a subpoena to SOIGA requesting any and all grievance records relative to Jackson from March 1, 2024 through the present.  (*Id.* ¶ 16).  Per that subpoena, SOIGA produced one grievance, number

1081445, which refers to medical treatment with suboxone and is unrelated to Jackson's claims against the Dental Defendants. (*Id.* ¶ 17).

SOIGA also produced separately filed correspondence from Jackson related to grievance numbers 1095487 and 1098415. (*Id.* ¶ 18). In Jackson's correspondence, dated September 22, 2024, he sought updates as to the status of appeals for each identified grievance. (*Id.* ¶ 19). Jackson's correspondence is dated after his complaint was filed in this case. (*Id.* ¶ 20). SOIGA responded to Jackson on October 7, 2024. (*Id.* ¶ 21). In that response, SOIGA stated that grievance number 1095487 was ripe for appeal to that office, but no appeals to that level had been filed; and that grievance number 1098415 required another intervening step in the appeal process before final appeal to SOIGA. (*Id.*).

The Dental Defendants assert that no further appeal documents related to either grievance were produced, and Jackson did not make any further attempts to appeal this grievance. (*Id.* ¶ 22). The Dental Defendants maintain further that Jackson's correspondence relative to these appeals is dated September 22, 2024, after his complaint in this matter was filed on August 29, 2024, demonstrating that he did not complete the appeal process prior to filing suit as required by 42 U.S.C. § 1997e(a). (*Id.* ¶ 23). Moreover, the Dental Defendants assert that Jackson claims to have filed grievance number 1095487 on April 3, 2024, before any treatment by or contact with Defendant Labosky. (*Id.* ¶ 24).

The Dental Defendants thus maintain that, by Jackson's own admission, he: (1) failed to exhaust administrative remedies regarding Defendant Ehgartner by failing to fully appeal grievance number 1095487; and (2) failed to file any grievance at all regarding Defendant Labosky.  (*Id.* ¶ 25).

C.    Discussion

The Dental Defendants contend that Jackson failed to properly exhaust any grievances against them in the prison's administrative review process prior to proceeding to federal court.  (Doc. 48, at 5-6).  The Prison Litigation Reform Act of 1995 ("PLRA"), 42 U.S.C. § 1997e *et seq.*, requires prisoners to exhaust available administrative remedies before suing prison officials for alleged constitutional violations.  *See id.* § 1997e(a); *Ross v. Blake*, 578 U.S. 632, 639, 642 (2016) (explaining that only "available" remedies must be exhausted).  The PLRA "exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."  *Porter v. Nussle*, 534 U.S. 516, 532 (2002).  It has been made clear that the exhaustion requirement is mandatory.  *See Williams v. Beard*, 482 F.3d 637, 639 (3d Cir. 2007); *see also Booth v. Churner*, 532 U.S. 731, 741 (2001) (holding that the exhaustion requirement of the PLRA applies to grievance procedures "regardless of the relief offered through administrative procedures"); *Nyhuis v. Reno*, 204 F.3d 65, 67 (3d Cir. 2000) (same).  "[I]t is beyond the power of [any] court…to excuse compliance with the

10

exhaustion requirement." *Nyhuis*, 204 F.3d at 73 (quoting *Beeson v. Fishkill Corr. Facility*, 28 F. Supp.2d 884, 894-95 (S.D.N.Y. 1998)).

To exhaust administrative remedies an inmate must comply with all applicable grievance procedures and rules. *Spruill v. Gillis*, 372 F.3d 218, 231 (3d Cir. 2004). The PLRA requires not only technical exhaustion of the administrative remedies, but also substantial compliance with procedural requirements. *Spruill*, 372 F.3d at 227-32; *see also Nyhuis*, 204 F.3d at 77-78. A procedural default by the prisoner, either through late or improper filings, bars the prisoner from bringing a claim in federal court unless equitable considerations warrant review of the claim. *Spruill*, 372 F.3d at 227-32; *see also Camp v. Brennan*, 219 F.3d 279 (3d Cir. 2000). A procedural default may be excused, however, if the prisoner can show that the administrative remedies were unavailable to him. *See Rinaldi v. United States*, 904 F.3d 257, 266 (3d Cir. 2018) (stating that "[t]he PLRA requires only 'proper exhaustion,' meaning exhaustion of those administrative remedies that are 'available'" (quoting *Woodford v. Ngo*, 548 U.S. 81, 93 (2006)). "An administrative remedy is unavailable when it "operates as a simple dead end[,]…is so opaque that it becomes, practically speaking, incapable of use, or when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation.'" *Downey v. Pa. Dep't of Corr.*, 968 F.3d 299, 305 (3d Cir. 2020) (quoting *Shifflett v. Korszniak*, 934 F.3d 356, 365 (3d Cir. 2019)).

As stated, the DOC employs a three-step grievance process that must be completed to properly exhaust administrative remedies in most cases. *See Booth v. Churner*, 206 F.3d 289, 292 n.2 (3d Cir. 2002); *Commonwealth of Pa., Dep't of Corr., Inmate Grievance Sys.*, Policy No. DC-ADM 804 ("DC-ADM 804"). If informal resolution attempts do not resolve the problem, the first step is to file a written grievance (using form DC-804, Part 1) with the Facility Grievance Coordinator within 15 working days after "the event upon which the claim is based." DC-ADM 804 § 1(A)(3)-(5). An adverse decision by the Grievance Coordinator may be appealed to the Facility Manager within 15 working days of the initial-review response or rejection. *Id.* § 2(A)(1). Finally, the decision of the Facility Manager may be appealed to "Final Review" with the Secretary's Office of Inmate Grievances and Appeals, and again must be submitted within 15 working days of the date of the Facility Manager's decision. *Id.* § 2(B)(1).

The DOC has specific requirements for grievances submitted by inmates. Those requirements include, among other things, that the grievance "be legible [and] understandable"; "include a statement of the facts relevant to the claim" as well as "the date, approximate time, and location of the event(s) that gave rise to the grievance"; that the prisoner "identify individuals directly involved in the event(s)"; and that the grievance include "the specific relief sought," including "compensation or other legal relief normally available from a court." *Id.* § 1(A)(11).

The evidence reflects that SOIGA received documents from Jackson related to three grievances—numbers 1081445, 1095487, and 1098415.  (*See* Doc. 48 at 6; Doc. 48-4; Doc. 52 ¶¶ 16-21).

Grievance number 1081445 pertains to medical treatment with suboxone and is not related to Jackson's claims against the Dental Defendants.  (Doc. 52 ¶ 17; Doc. 48-3).

Grievance numbers 1095487 and 1098415 pertain to Jackson's deliberate indifference to dental care claims.  (Doc. 69-1; Doc. 66-3).  On October 7, 2024, SOIGA noted that Jackson sent a letter to the Chief Grievance Officer concerning grievance numbers 1095487 and 1098415.  (Doc. 48-4).  SOIGA found that no action would be taken, and reasoned as follows:

> This office is in receipt of your letter dated 9/22/24 in which you are inquiring about the status of your appeals to final review for the above listed grievance numbers.  Review of the record finds that no appeals to final review have been received for either of these grievances.  While the next step in the appeal process for grievance number 1095487 would be to appeal to final review, the next step in the appeal process for grievance number 1094815 would be to appeal to the Facility Manager at SCI HUN.  Should you attempt to appeal grievance number 1095487 to this office for final review, this letter does not automatically grant you the right to a timely appeal.

(Doc. 48-4 at 1).

It is undisputed that Jackson sent his letter to SOIGA on September 22, 2024, and that he filed his complaint in this matter on August 29, 2024.  (Doc. 1; Doc. 48-4 at 1).  The PLRA mandates that inmates properly exhaust their administrative remedies *before* filing suit in federal court, a requirement which demands compliance with an agency's deadlines

and procedural rules. *Woodford*, 548 U.S. at 90-93. It is well-settled that administrative

remedies must be exhausted *prior* to the initiation of suit. *Booth*, 532 U.S. at 738 ("The

'available' 'remed[y]' must be 'exhausted' before a complaint under § 1983 may be

entertained."); *see also Oriakhi v. United States*, 165 F. App'x 991, 993 (3d Cir. 2006)

(nonprecedential) ("[A] prisoner must exhaust all available administrative remedies prior to

filing suit."). Jackson did not do so in this case. Jackson's letter was sent to SOIGA

approximately one month after he filed suit in federal court and does not satisfy the

exhaustion requirement.

Furthermore, Jackson's letter to SOIGA does not comply with the requirements of

Section 2 of DC-ADM 804 regarding appeals to Final Review. The DOC's grievance policy

consists of three steps. The final step involves an appeal to the SOIGA within 15 working

days of the Facility Manager's Appeal Response. A proper appeal to final review must

include: (1) a legible copy of the Initial Grievance; (2) a copy of the initial review

response/rejection and/or remanded initial review response/rejection; (3) a legible copy of

the Inmate Appeal to the Facility Manager; (4) a copy of the Facility Manager/designee's

decision and/or remanded Facility Manager/designee's decision; (5) a written appeal to the

SOIGA…" DC-ADM 804 § 2(B)(1)(j). "[F]ailure to provide any of the documentation noted

above may result in the appeal being dismissed." *Id.* § 2(B)(1)(j)(6). The evidence confirms

that Jackson failed to comply with these requirements. A prisoner's failure to comply with

the procedural and substantive requirements of the DOC's grievance policy, as set forth in

DC-ADM 804, results in procedural default, thereby precluding an action in federal court. *See Woodford*, 548 U.S. at 84, 90-91; *Spruill*, 372 F.3d at 227-32.

As the Dental Defendants have provided evidence to support their failure to exhaust defense, the burden shifts to Jackson to produce evidence that the DOC grievance remedies were not available to him. Jackson has failed to meet this burden.

Jackson responds that he sent grievance appeals to SOIGA, but they were dismissed on procedural grounds. (Docs. 65, 69). He also submitted grievances to the Court that he filed in October and November of 2024, after he initiated this action. (Doc. 69). Jackson's argument misses the mark. Jackson cannot satisfy the exhaustion requirement by arguing that he submitted additional grievances after he initiated this action. And, Jackson has not presented any evidence that he complied with the requirements of Section 2 of DC-ADM 804 regarding appeals to Final Review. It is thus undisputed that Jackson failed to comply with the listed requirements for filing a proper appeal to final review.

Under certain circumstances, administrative remedies may not be effectively available to an inmate, preventing a timely pursuit of the prison grievance process. *See, e.g., Camp* 219 F.3d at 281; *Shifflett*, 934 F.3d at 359 ("a prisoner exhausts his administrative remedies as soon as the prison fails to respond to a properly submitted grievance in a timely fashion"); *Robinson v. Superintendent Rockview SCI*, 831 F.3d 148, 154 (3d Cir. 2016) (holding that prison officials rendered plaintiff's administrative remedies

unavailable when they failed to timely respond to his grievance and ignored his follow-up requests for a decision). The record simply does not support a finding that the administrative process was unavailable to Jackson. To the contrary, it establishes that Jackson had full and ready access to the administrative remedy process.

In sum, neither of the relevant grievances, numbers 1095487 and 1098415, were properly exhausted. Jackson has not provided any basis to excuse his failure to exhaust administrative remedies. Under Rule 56, Jackson was required to establish the existence of a genuine dispute of material fact. *See Celotex Corp.*, 477 U.S. at 324. He has failed to do so. Consequently, the Court concludes that Jackson has not properly exhausted the claims in this action, and the Dental Defendants are entitled to an entry of summary judgment in their favor.

Even had Jackson properly exhausted, his claims are subject to dismissal, as set forth below.

### III.    Rule 12(b)(6) Motion

#### A.    Legal Standard

A complaint must be dismissed under FED. R. CIV. P. 12(b)(6), if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). The plaintiff must aver "factual content that allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009).

"Though a complaint 'does not need detailed factual allegations,…a formulaic recitation of the elements of a cause of action will not do.'" *DelRio-Mocci v. Connolly Prop. Inc.*, 672 F.3d 241, 245 (3d Cir. 2012) (citing *Twombly*, 550 U.S. at 555). In other words, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Covington v. Int'l Ass'n of Approved Basketball Officials*, 710 F.3d 114, 118 (3d Cir. 2013) (internal citations and quotation marks omitted). A court "take[s] as true all the factual allegations in the Complaint and the reasonable inferences that can be drawn from those facts, but . . . disregard[s] legal conclusions and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Ethypharm S.A. France v. Abbott Laboratories*, 707 F.3d 223, 231, n.14 (3d Cir. 2013) (internal citations and quotation marks omitted).

> *Twombly* and *Iqbal* require [a district court] to take the following three steps to determine the sufficiency of a complaint: First, the court must take note of the elements a plaintiff must plead to state a claim. Second, the court should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. Finally, where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.

*Connelly v. Steel Valley Sch. Dist.*, 706 F.3d 209, 212 (3d Cir. 2013).

"[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not show[n] - that the

pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (internal citations and quotation marks omitted). This "plausibility" determination will be a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

However, even "if a complaint is subject to Rule 12(b)(6) dismissal, a district court must permit a curative amendment unless such an amendment would be inequitable or futile." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 245 (3d Cir. 2008).

> [E]ven when plaintiff does not seek leave to amend his complaint after a defendant moves to dismiss it, unless the district court finds that amendment would be inequitable or futile, the court must inform the plaintiff that he or she has leave to amend the complaint within a set period of time.

*Id.*

B.    Discussion

In order to establish an Eighth Amendment medical claim, a plaintiff "must show (i) a serious medical need, and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need." *Natale v. Camden Cnty. Correctional Facility*, 318 F.3d 575, 582 (3d Cir. 2003) (citing *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999)). A serious medical need is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would recognize the necessity for a doctor's attention." *Monmouth Cnty. Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987). In addition, "if unnecessary and wanton infliction of pain results as a consequence of denial or delay in the provision of adequate medical care, the medical need is of the serious nature contemplated by the eighth amendment." *Id.* (citation omitted).

A prison official acts with deliberate indifference to an inmate's serious medical needs when he "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). A mere difference of opinion between the prison's medical staff and the inmate regarding the diagnosis or treatment which the inmate receives does not support a claim of cruel and unusual punishment. *See Farmer v. Carlson*, 685 F. Supp. 1335, 1339 (M.D. Pa. 1988); *see also McCracken v. Jones*, 562 F.2d 22, 24 (10th Cir. 1977); *Smart v. Villar*, 547 F.2d 112, 113 (10th Cir. 1976), *cert. denied*, 450 U.S. 1041 (1981). Moreover, "[i]f a prisoner is under the care of medical experts…a non-medical prison official will generally be justified in believing that the prisoner is in capable hands." *Spruill*, 372 F.3d at 236. Accordingly, "absent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner, a non-medical prison official…will not be chargeable with the Eighth Amendment scienter requirement of deliberate indifference." *Id.*

Assuming that Jackson's allegations qualify as a serious medical condition for purposes of the Eighth Amendment analysis, the Court must determine whether he has established a deliberate indifference to that need.

Jackson has not established that the Dental Defendants were deliberately indifferent to his serious medical needs. In *Gillespie v. Hogan,* 182 F. App'x 103 (3d Cir. 2006), the

defendant dentist negligently removed the tooth of a prisoner, leaving part of the tooth in his gums for more than a year. *Id.* at 104. As a result, the prisoner suffered significant pain and hardship while the tooth fragment remained in his mouth. *Id.* at 105. The Third Circuit held that the negligent oral surgery did not rise to the level of "deliberate indifference" required for a § 1983 claim. *Id.*

Similarly, Jackson's claims do not rise to the level of deliberate indifference. By Jackson's own account, he presented to the Dental Defendants for dental treatment. There is no indication that the actions of the Dental Defendants were based on an ulterior motive beyond providing routine patient care. *See Spruill,* 372 F.3d at 237 (noting that in order to state a deliberate indifference claim, a plaintiff should in some way "connect[ ] his factual allegations to the alleged mental states" of the defendants).

With respect to Defendant Dentist Ehgartner, Jackson alleges that Dentist Ehgartner treated him on one occasion—on April 2, 2024, at SCI-Smithfield. (Doc. 1 ¶ IV, 4). Jackson alleges that Defendant Dentist Ehgartner cemented a broken crown, but informed Jackson that he needed a new post which could be done at Jackson's home prison. (*Id.* ¶¶ IV, 5-6). Jackson asserts that Defendant Dentist Ehgartner's action of cementing the crown, instead of using a post, represented an "easier and less efficacious course of treatment." (*Id.* ¶ V, 3). There are no further allegations against Defendant Dentist Ehgartner. (*See generally* Doc. 1).

With respect to Defendant Dentist Labosky, Jackson alleges that Dentist Labosky first treated him on July 3, 2024, at SCI-Huntingdon. (Doc. 1 ¶ IV, 17). During this visit, Defendant Dentist Labosky examined Jackson and informed him that he needed a new post. (*Id*. ¶ IV, 19). Defendant Dentist Labosky allegedly informed Jackson that the DOC does not put in posts, and that Jackson would need to get the post implanted when he was released from prison. (*Id*.). Jackson alleges that Defendant Dentist Labosky next treated him on July 11, 2024, and drilled down two of his teeth. (*Id.* ¶ IV, 31). Jackson alleges that Defendant Dentist Labosky did not address his additional dental needs at this visit. (*Id.*). Jackson next asserts that he was seen by Defendant Dentist Labosky on July 31, 2024, and he informed Laboksy that he intended to file a civil complaint for denial of medical care. (*Id.* ¶ IV, 33). As a result, Jackson alleges that Defendant Dentist Labosky failed to provide medical care on that date. (*Id.*).

Based on these allegations, Jackson has failed to allege that Defendants Labosky and Ehgartner had a culpable state of mind. Jackson's complaints about the type of dental services rendered, and cementing a crown instead of using a post, amount to little more than disagreement with treatment methods, which is insufficient to state a constitutional violation. *See Spruill*, 372 F.3d at 235 ("[m]ere disagreement as to the proper medical treatment" is insufficient to state a constitutional violation) (citations omitted).

Furthermore, Jackson does not allege a complete denial of dental treatment or any undue delay in providing treatment. To the contrary, by his own allegations, Jackson

received dental care and treatment by Defendants Labosky and Ehgartner, he underwent procedures, and attended follow-up visits with Labosky. Although their dental care (regarding a "post crown") may have been constrained by DOC policy, Jackson "does not have a constitutional right to unlimited medical care of his choosing, free from all considerations of cost." *Winslow v. Prison Health Servs.*, 406 F. App'x 671, 675-76 (3d Cir. 2011). Regarding any perceived delay in treatment, the delay was due to Jackson's facility transfers.

Hence, the allegations of the complaint do not amount to deliberate indifference to a serious medical need. *See Isenberg v. Prasse,* 433 F.2d 449 (3d Cir. 1970) (rejecting a claim that malpractice by a dentist while extracting teeth constitutes unconstitutional cruel and unusual punishment); *Green v. Dep't of Corr.,* 2012 WL 2354443, *3 (3d Cir. 2012) (finding that the prisoner's claim that the prison dentist accidentally broke his front tooth alleged mere negligence and did not rise to level of deliberate indifference to prisoner's needs). There is no indication that the actions of the Dental Defendants were deliberate or intentional or that they possessed the requisite mental intent to sustain a deliberate indifference claim. Jackson was dissatisfied with the treatment he received, but his dissatisfaction does not support a deliberate indifference claim. *See Tillery v. Noel*, 2018 WL 3521212, at *5 (M.D. Pa. June 28, 2018) (collecting cases) ("an inmate's dissatisfaction with a course of medical treatment, standing alone, does not give rise to a viable Eighth Amendment claim."). Such complaints fail as constitutional claims because "prison

authorities are accorded considerable latitude in the diagnosis and treatment of prisoners," *Durmer v. O'Carroll*, 991 F.2d 64, 67 (3d Cir. 1993) (citations omitted), and "the exercise by a doctor of his professional judgment is never deliberate indifference," *Gindraw v. Dendler*, 967 F. Supp. 833, 836 (E.D. Pa. 1997) (citing *Brown v. Borough of Chambersburg*, 903 F.2d 274, 278 (3d Cir. 1990) ("[A]s long as a physician exercises professional judgment his behavior will not violate a prisoner's constitutional rights.")).  For these reasons, the Court will dismiss the Eighth Amendment inadequate medical care claim against the Dental Defendants.

      C.    *Leave to* Amend

      Before dismissing a complaint for failure to state a claim upon which relief may be granted, the Court must grant a plaintiff leave to amend his complaint unless amendment would be inequitable or futile.  *See Grayson v. Mayview State Hospital*, 293 F.3d 103, 114 (3d Cir. 2002).  The Court concludes that granting Jackson leave to amend would be futile as the complained of deprivations simply do not rise to the level of an Eighth Amendment violation.  Moreover, Jackson has failed to oppose the Dental Defendants' motions. Finally, where, as here, the plaintiff has failed to exhaust his administrative remedies, amendment would be futile because amendment cannot cure such a failure.  *See, e.g.*, *Griffin v. Malisko*, 2018 WL 5437743 (M.D. Pa. Oct. 29, 2018).

## IV.    Conclusion

The Court will grant the Dental Defendants' motions (Docs. 41, 46) in their entirety.

A separate Order shall issue.

Robert D. Mariani
United States District Judge

Dated: June ____, 2025