IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| WILLIAM P. JACKSON, | : | Civil No. 3:24-cv-1469 |
| Plaintiff | : | |
| | : | (Judge Mariani) |
| v. | : | |
| DR. LABOSKY, *et al.*, | : | |
| Defendants | : | |

**MEMORANDUM**

Plaintiff William Jackson ("Jackson"), an inmate in the custody of the Pennsylvania Department of Corrections ("DOC"), initiated this *pro se* civil rights action on August 29, 2024, by filing a complaint pursuant to 42 U.S.C. § 1983. (Doc. 1). Named as Defendants are Dentist Labosky, Dentist Ehgartner, Superintendent Rivello, Deputy Superintendent Spyker, Dental Assistant Hess, Dental Assistant Diehl, and Corrections Health Care Administrator ("CHCA") McCorkle. (*Id.*).

Before the Court is a motion for summary judgment filed on behalf of McCorkle, Hess, and Diehl (collectively, the "Corrections Defendants"). (Doc. 62). At this juncture, the Corrections Defendants seek summary judgment only based on Jackson's failure to exhaust the available administrative remedies.[1] Jackson failed to respond to the Corrections

---

[1] Because the Corrections Defendants raised the issue of exhaustion of administrative remedies, the Court issued an Order notifying the parties that it would consider exhaustion in its role as factfinder in accordance with *Paladino v. Newsome*, 885 F.3d 203 (3d Cir. 2018) and *Small v. Camden Cnty.*, 728 F.3d 265 (3d Cir. 2013), and afforded the parties the opportunity to supplement the record with any additional evidence relevant to exhaustion of administrative remedies. (Doc. 66).

Defendants' motion and the time for responding has now passed.[2] Therefore, the motion is deemed unopposed and ripe for resolution. For the reasons set forth below, the Court will grant the motion.

## I. Allegations of the Complaint

The gravamen of Jackson's lawsuit is alleged deliberate indifference to serious medical needs in violation of the Eighth Amendment related to his dental care from March 2024 to August 2024, while he was incarcerated at SCI-Smithfield, SCI-Camp Hill, SCI-Fayette, and SCI-Huntingdon. (Doc. 1).

Jackson alleges that he arrived at SCI-Smithfield on March 12, 2024. (*Id.* ¶ IV, 1). Upon intake at SCI-Smithfield, Jackson allegedly reported to medical staff that he had cavities, no back teeth, and experienced pain and difficulty chewing. (*Id.* ¶ IV, 2). Between March 12, 2024 and April 2, 2024, Jackson asserts that he submitted several sick call slips complaining about cavities and pain. (*Id.* ¶ IV, 3). On April 2, 2024, Dentist Ehgartner treated Jackson and repaired his tooth. (*Id.* ¶ IV, 4). During this appointment, Jackson alleges that Defendant Dental Assistant Diehl broke a crown. (*Id.*). Dentist Ehgartner informed Jackson that he would cement the crown, but he needed a new post which could be done at Jackson's home prison. (*Id.* ¶¶ IV, 5-6).

---

[2] Jackson was directed to file a brief in opposition to the Corrections Defendants' motion and was admonished that failure to file an opposition brief would result in the Corrections Defendants' motion being deemed unopposed. (Doc. 70) (citing M.D. PA. LOCAL RULE OF COURT 7.6).

Jackson was then transferred to SCI-Camp Hill for classification. (*Id.* ¶ IV, 7). During intake at SCI-Camp Hill, Jackson was informed that he should wait until he was transferred to his home prison to address his needs. (*Id.* ¶ IV, 8). On May 8, 2024, Jackson was transferred to SCI-Fayette. (*Id.* ¶ IV, 9). At SCI-Fayette, Jackson submitted sick call slips related to his dental condition but was again informed that he should wait until he was transferred to his home prison to address his needs. (*Id.* ¶¶ IV, 10-11).

On June 20, 2024, Jackson was transferred to SCI-Huntingdon, his home prison. (*Id.* ¶ IV, 12). During intake, Jackson claims that he reported to medical staff that he had several cavities, severe pain, bleeding gums, difficulty chewing, and no back teeth. (*Id.* ¶ IV, 13). A few days later, on June 26, 2024, Jackson's crown fell out—the same day he sent a sick call slip regarding his broken crown and cavities. (*Id.* ¶ IV, 14). Between June 30, 2024 and July 2, 2024, Jackson submitted sick call slips due to pain and bleeding gums. (*Id.* ¶ IV, 16). On July 3, 2024, Jackson was called to the dental office when Defendant Dental Assistant Hess allegedly informed him that there was a line for dental services, and he was "not jumping the line." (*Id.* ¶ IV, 17). That same day, Dentist Labosky examined Jackson and informed him that he needed a new post. (*Id.* ¶ IV, 19). Dentist Labosky allegedly stated that the DOC does not put in posts, and that Jackson would have to get the post implanted when he was released from prison. (*Id.*). Jackson alleges that Defendant Dental Assistant Hess confiscated the crown that had fallen out of Jackson's mouth as contraband because it contained metal. (*Id.* ¶ IV, 20). Defendant Dental Assistant Hess

3

again informed Jackson that he had to wait for care regarding his cavities, pain, and bleeding gums because there were several inmates waiting in line for treatment before him. (*Id.* ¶¶ IV, 20-22).

Between June 29, 2024, and July 26, 2024, Jackson claims that he sent eight Inmate Request to Staff Member forms to Defendant CHCA McCorkle. (*Id.* ¶ IV, 27). Defendant CHCA McCorkle allegedly responded that "[i]t was explained to you, there is a waiting list and you can't jump the line." (*Id.*).

Between June 29, 2024, and August 8, 2024, Jackson claims that he sent eight Inmate Request to Staff Member forms to Superintendent Rivello. (*Id.* ¶ IV, 28). Superintendent Rivello allegedly did not intercede on Jackson's behalf. (*Id.*).

Between June 30, 2024, and August 8, 2024, Jackson claims that he sent ten Inmate Request to Staff Member forms to Deputy Superintendent Spyker. (*Id.* ¶ (IV)(29). Deputy Superintendent Spyker allegedly did not intercede on Jackson's behalf. (*Id.*).

On July 11, 2024, Jackson submitted a sick call slip concerning his pain and bleeding gums and indicated that he had to miss meals due to his dental condition. (*Id.* ¶ IV, 30). The complaint does not indicate who Jackson sent this slip to. (*See id.*).

On July 11, 2024, Dentist Labosky treated Jackson and drilled down two of his teeth. (*Id.* ¶ IV, 31). Jackson alleges that Dentist Labosky did not address his pain, cavities, broken crown, bleeding gums, or need for a bridge. (*Id.*).

4

Between July 24, 2024 and August 8, 2024, Jackson claims that he submitted ten sick call slips complaining about his pain and bleeding gums. (*Id.* ¶ IV, 32). The complaint does not indicate who these slips were sent to. (*See id.*).

On July 31, 2024, Jackson met with Dentist Labosky and Defendant Dental Assistant Hess and informed them that he intended to file a civil complaint for denial of medical care. (*Id.* ¶ IV, 33). In response to this statement, Jackson alleges that Dentist Labosky and Defendant Dental Assistant Hess failed to provide medical care on that date. (*Id.*).

## II. Statement of Undisputed Facts[3]

Jackson alleges that he was denied adequate dental care on April 2, 2024, by Defendant Dental Assistant Diehl and Dentist Ehgartner. (Doc. 63 ¶ 2). Jackson alleges that Defendant Dental Assistant Hess told him there were other inmates ahead of him and confiscated his crown (that had fallen out on June 26, 2020) on July 3, 2024. (*Id.* ¶ 3).

---

[3] Local Rule 56.1 requires that a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56 be supported "by a separate, short, and concise statement of the material facts, in numbered paragraphs, as to which the moving party contends there is no genuine issue to be tried." LOCAL RULE OF COURT 56.1. A party opposing a motion for summary judgment must file a separate statement of material facts, responding to the numbered paragraphs set forth in the moving party's statement and identifying genuine issues to be tried. *Id.* Unless otherwise noted, the factual background herein derives from the Corrections Defendants' Rule 56.1 statement of material facts. (Doc. 63). Jackson failed to file a response to the Corrections Defendants' statement of material facts. Therefore, as authorized by Local Rule 56.1, the Court will admit as uncontroverted the statement of facts submitted by the Corrections Defendants. *See* M.D. PA. LOCAL RULE OF COURT 56.1 ("All material facts set forth in the statement required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party."); *see also Rau v. Allstate Fire & Cas. Ins. Co.*, 793 F. App'x 84, 87 (3d Cir. 2019) (upholding this Court's decision to strike non-movant's non-responsive counterstatement of facts under Local Rule 56.1); *Weitzner v. Sanofi Pasteur Inc.*, 909 F.3d 604, 613 (3d Cir. 2018) (finding that "the District Court is in the best position to determine the extent of a party's noncompliance with Local Rule 56.1, as well as the appropriate sanction for such noncompliance"); *see also* Doc. 70 ¶ 2 (advising Jackson that failure to file a responsive statement of material facts would result in the facts set forth in the Corrections Defendants' statement of material facts being deemed admitted).

5

Jackson alleges that he sent numerous requests to staff member forms to Defendant McCorkle between June 29, 2024, until July 26, 2024. (*Id.* ¶ 4). Jackson's July 31, 2024 claims are not asserted against the Corrections Defendants. (*Id.* ¶ 5).

DC-ADM 804 is the Department of Corrections' policy pertaining to the filing and appeal of inmate grievances. (*Id.* ¶ 6). DC-ADM 804 sets out a three-step grievance and appeals process available to inmates incarcerated within the DOC: (1) an initial review by a Grievance Officer; (2) appeal to the Facility Manager or designee; and (3) appeal to the Secretary's Office of Inmate Grievances and Appeals ("SOIGA") for final review. (*Id.* ¶ 7). Pursuant to DC-ADM 804, any inmate personally affected by a Department or institutional action or policy, or by the action of a Department employee, may file a grievance within 15 working days of the occurrence of the grieved event. (*Id.* ¶ 8). When filing a grievance, the inmate must include a statement of the relevant facts to their claim containing the: (A) date, approximate time, location of the alleged events, (B) the identity of the directly involved individuals, (C) the specific claims they wish to make regarding the alleged events, and (D) any compensation they seek. (*Id.* ¶ 9).

Between April 1, 2024 and August 31, 2024, Jackson failed to appropriately appeal any grievance to final review with SOIGA. (*Id.* ¶ 10).

Between April 1, 2024 and August 29, 2024, SOIGA received incomplete and improper documents from Jackson. (*Id.* ¶ 11).

In relation to this matter, SOIGA produced one grievance, number 1081445, which refers to medical treatment with suboxone and is unrelated to Jackson's claims against the Corrections Defendants. (*Id.* ¶ 12).

SOIGA also produced separately filed correspondence from Jackson related to grievance numbers 1095487 and 1098415. On September 22, 2024, Jackson sent a letter to SOIGA pertaining to grievance numbers 1095487 and 1098415. (*Id.* ¶ 13). Jackson failed to appeal grievance numbers 1095487 and 109415 to final review with SOIGA. (*Id.* ¶ 14). The procedural history of grievance numbers 1095487 and 109415 is as follows.

On July 2, 2024, SCI-Huntingdon's grievance coordinator received grievance 1095487. (*Id.* ¶ 15). Grievance 1095487 did not name McCorkle, Hess, or Diehl. (*Id.* ¶ 16). Jackson did not seek monetary damages within grievance 1095487. (*Id.* ¶ 17). McCorkle served as the grievance officer for the initial review response to grievance 1095487. (*Id.* ¶ 18). Jackson did not appeal grievance 1095487 to final review. (*Id.* ¶ 14).

On July 18, 2024, SCI-Huntingdon's grievance coordinator received grievance 1098415. (*Id.* ¶ 19). The grievance seeks to raise issues with the dental care Jackson received on July 17, 2024. (*Id.* ¶ 20). McCorkle is the only current Defendant named within grievance 1098415. (*Id.* ¶ 21). Jackson did not seek monetary damages within grievance 1098415. (*Id.* ¶ 22). Jackson did not appeal grievance 1094815 to final review. (*Id.* ¶ 14).

## III. Rule 56 Legal Standard

Through summary adjudication, the court may dispose of those claims that do not present a "genuine dispute as to any material fact." FED. R. CIV. P. 56(a). "As to materiality, . . . [o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The party moving for summary judgment bears the burden of showing the absence of a genuine issue as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once such a showing has been made, the non-moving party must offer specific facts contradicting those averred by the movant to establish a genuine issue of material fact. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990). Therefore, the non-moving party may not oppose summary judgment simply on the basis of the pleadings, or on conclusory statements that a factual issue exists. *Anderson*, 477 U.S. at 248. "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record . . . or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." FED. R. CIV. P. 56(c)(1)(A)-(B). In evaluating whether summary judgment should be granted, "[t]he court need consider only the cited materials, but it may consider other materials in the record." FED. R. CIV. P. 56(c)(3). "Inferences should be drawn in the light most favorable to the non-

8

moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir.1992), *cert. denied* 507 U.S. 912 (1993).

However, "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380, 127 S. Ct. 1769, 1776, 167 L. Ed. 2d 686 (2007). If a party has carried its burden under the summary judgment rule,

> its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact. When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.

*Id.* (internal quotations, citations, and alterations omitted).

## IV.   Discussion

The Corrections Defendants argue that Jackson failed to properly exhaust any grievances against them in the prison's administrative review process prior to proceeding to federal court. (Doc. 64, at 6-12). The Prison Litigation Reform Act of 1995 ("PLRA"), 42 U.S.C. § 1997e *et seq.*, requires prisoners to exhaust available administrative remedies before suing prison officials for alleged constitutional violations. *See id.* § 1997e(a); *Ross v. Blake*, 578 U.S. 632, 639, 642 (2016) (explaining that only "available" remedies must be

9

exhausted). The PLRA "exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). It has been made clear that the exhaustion requirement is mandatory. *See Williams v. Beard*, 482 F.3d 637, 639 (3d Cir. 2007); *see also Booth v. Churner*, 532 U.S. 731, 741 (2001) (holding that the exhaustion requirement of the PLRA applies to grievance procedures "regardless of the relief offered through administrative procedures"); *Nyhuis v. Reno*, 204 F.3d 65, 67 (3d Cir. 2000) (same). "[I]t is beyond the power of [any] court…to excuse compliance with the exhaustion requirement." *Nyhuis*, 204 F.3d at 73 (quoting *Beeson v. Fishkill Corr. Facility*, 28 F. Supp.2d 884, 894-95 (S.D.N.Y. 1998)).

To exhaust administrative remedies an inmate must comply with all applicable grievance procedures and rules. *Spruill v. Gillis*, 372 F.3d 218, 231 (3d Cir. 2004). The PLRA requires not only technical exhaustion of the administrative remedies, but also substantial compliance with procedural requirements. *Spruill*, 372 F.3d at 227-32; *see also Nyhuis*, 204 F.3d at 77-78. A procedural default by the prisoner, either through late or improper filings, bars the prisoner from bringing a claim in federal court unless equitable considerations warrant review of the claim. *Spruill*, 372 F.3d at 227-32; *see also Camp v. Brennan*, 219 F.3d 279 (3d Cir. 2000). A procedural default may be excused, however, if the prisoner can show that the administrative remedies were unavailable to him. *See Rinaldi v. United States*, 904 F.3d 257, 266 (3d Cir. 2018) (stating that "[t]he PLRA requires

only 'proper exhaustion,' meaning exhaustion of those administrative remedies that are 'available'" (quoting *Woodford v. Ngo*, 548 U.S. 81, 93 (2006)). "An administrative remedy is unavailable when it "operates as a simple dead end[,]…is so opaque that it becomes, practically speaking, incapable of use, or when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation.'" *Downey v. Pa. Dep't of Corr.*, 968 F.3d 299, 305 (3d Cir. 2020) (quoting *Shifflett v. Korszniak*, 934 F.3d 356, 365 (3d Cir. 2019)).

As stated, the DOC employs a three-step grievance process that must be completed to properly exhaust administrative remedies in most cases. *See Booth v. Churner*, 206 F.3d 289, 292 n.2 (3d Cir. 2002); *Commonwealth of Pa., Dep't of Corr., Inmate Grievance Sys.*, Policy No. DC-ADM 804 ("DC-ADM 804"). If informal resolution attempts do not resolve the problem, the first step is to file a written grievance (using form DC-804, Part 1) with the Facility Grievance Coordinator within 15 working days after "the event upon which the claim is based." DC-ADM 804 § 1(A)(3)-(5). An adverse decision by the Grievance Coordinator may be appealed to the Facility Manager within 15 working days of the initial-review response or rejection. *Id.* § 2(A)(1). Finally, the decision of the Facility Manager may be appealed to "Final Review" with the Secretary's Office of Inmate Grievances and Appeals, and again must be submitted within 15 working days of the date of the Facility Manager's decision. *Id.* § 2(B)(1).

The DOC has specific requirements for grievances submitted by inmates. Those requirements include, among other things, that the grievance "be legible [and] understandable"; "include a statement of the facts relevant to the claim" as well as "the date, approximate time, and location of the event(s) that gave rise to the grievance"; that the prisoner "identify individuals directly involved in the event(s)"; and that the grievance include "the specific relief sought," including "compensation or other legal relief normally available from a court." *Id.* § 1(A)(11).

The evidence reflects that SOIGA received documents from Jackson related to three grievances—numbers 1081445, 1095487, and 1098415. (*See* Doc. 63 ¶¶ 10-11; Doc. 48-4).

Grievance number 1081445 pertains to medical treatment with suboxone and is not related to Jackson's claims against the Corrections Defendants. (Doc. 63 ¶ 12; Doc. 48-3).

Grievance numbers 1095487 and 1098415 pertain to Jackson's deliberate indifference to dental care claims. (Doc. 63-1; Doc. 63-2). On October 7, 2024, SOIGA noted that Jackson sent a letter to the Chief Grievance Officer concerning grievance numbers 1095487 and 1098415. (Doc. 48-4). SOIGA found that no action would be taken, and reasoned as follows:

> This office is in receipt of your letter dated 9/22/24 in which you are inquiring about the status of your appeals to final review for the above listed grievance numbers. Review of the record finds that no appeals to final review have been received for either of these grievances. While the next step in the appeal process for grievance number 1095487 would be to appeal to final review, the next step in the appeal process for grievance number 1094815

12

>would be to appeal to the Facility Manager at SCI HUN. Should you attempt to appeal grievance number 1095487 to this office for final review, this letter does not automatically grant you the right to a timely appeal.

(Doc. 48-4, at 1).

It is undisputed that Jackson sent his letter to SOIGA on September 22, 2024, and that he filed his complaint in this matter on August 29, 2024. (Doc. 1; Doc. 48-4, at 1). The PLRA mandates that inmates properly exhaust their administrative remedies *before* filing suit in federal court, a requirement which demands compliance with an agency's deadlines and procedural rules. *Woodford*, 548 U.S. at 90-93. It is well-settled that administrative remedies must be exhausted *prior* to the initiation of suit. *Booth*, 532 U.S. at 738 ("The 'available' 'remed[y]' must be 'exhausted' before a complaint under § 1983 may be entertained."); *see also Oriakhi v. United States*, 165 F. App'x 991, 993 (3d Cir. 2006) (nonprecedential) ("[A] prisoner must exhaust all available administrative remedies prior to filing suit."). Jackson did not do so in this case. Jackson's letter was sent to SOIGA approximately one month after he filed suit in federal court and does not satisfy the exhaustion requirement.

Furthermore, Jackson's letter to SOIGA does not comply with the requirements of Section 2 of DC-ADM 804 regarding appeals to Final Review. The DOC's grievance policy consists of three steps. The final step involves an appeal to the SOIGA within 15 working days of the Facility Manager's Appeal Response. A proper appeal to final review must include: (1) a legible copy of the Initial Grievance; (2) a copy of the initial review

13

response/rejection and/or remanded initial review response/rejection; (3) a legible copy of the Inmate Appeal to the Facility Manager; (4) a copy of the Facility Manager/designee's decision and/or remanded Facility Manager/designee's decision; (5) a written appeal to the SOIGA..." DC-ADM 804 § 2(B)(1)(j). "[F]ailure to provide any of the documentation noted above may result in the appeal being dismissed." *Id.* § 2(B)(1)(j)(6). The evidence confirms that Jackson failed to comply with these requirements. A prisoner's failure to comply with the procedural and substantive requirements of the DOC's grievance policy, as set forth in DC-ADM 804, results in procedural default, thereby precluding an action in federal court. *See Woodford*, 548 U.S. at 84, 90-91; *Spruill*, 372 F.3d at 227-32.

As the Corrections Defendants have provided evidence to support their failure to exhaust defense, the burden shifts to Jackson to produce evidence that the DOC grievance remedies were not available to him. Jackson has failed to meet this burden.

Jackson responds that he sent grievance appeals to SOIGA, but they were dismissed on procedural grounds. (Docs. 65, 69). He also submitted grievances to the Court that he filed in October and November of 2024, after he initiated this action. (Doc. 69). Jackson's argument misses the mark. Jackson cannot satisfy the exhaustion requirement by arguing that he submitted additional grievances after he initiated this action. And, Jackson has not presented any evidence that he complied with the requirements of Section 2 of DC-ADM 804 regarding appeals to Final Review. It is thus undisputed that

14

Jackson failed to comply with the listed requirements for filing a proper appeal to final review.

Under certain circumstances, administrative remedies may not be effectively available to an inmate, preventing a timely pursuit of the prison grievance process. *See, e.g., Camp*, 219 F.3d at 281; *Shifflett*, 934 F.3d at 359 ("a prisoner exhausts his administrative remedies as soon as the prison fails to respond to a properly submitted grievance in a timely fashion"); *Robinson v. Superintendent Rockview SCI*, 831 F.3d 148, 154 (3d Cir. 2016) (holding that prison officials rendered plaintiff's administrative remedies unavailable when they failed to timely respond to his grievance and ignored his follow-up requests for a decision). The record simply does not support a finding that the administrative process was unavailable to Jackson. To the contrary, it establishes that Jackson had full and ready access to the administrative remedy process.

In sum, neither of the relevant grievances, numbers 1095487 and 1098415, were properly exhausted. Jackson has not provided any basis to excuse his failure to exhaust administrative remedies. Under Rule 56, Jackson was required to establish the existence of a genuine dispute of material fact. *See Celotex Corp.*, 477 U.S. at 324. He has failed to do so. Consequently, the Court concludes that Jackson has not properly exhausted the claims in this action, and the Corrections Defendants are entitled to an entry of summary judgment in their favor.

## V.     Conclusion

Consistent with the foregoing, the Court will grant the Corrections Defendants' motion (Doc. 62) and enter judgment in their favor. A separate Order shall issue.

*Robert D. Mariani*
United States District Judge

Dated: July 14, 2025